# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

MARK CRANE, individually and on
behalf of all others similarly situated,

|  |  |
|---|---|
|  | CIVIL ACTION NO. 2:22-CV-11267 |
| Plaintiff, | DISTRICT JUDGE TERRENCE G. BERG |
| v. | MAGISTRATE JUDGE CURTIS IVY, JR. |
| AMERICAN BAR ASSOCIATION, |  |
| Defendant. |  |

## **DEFENDANT'S BRIEF IN SUPPORT OF MOTION TO DISMISS COMPLAINT UNDER RULES 12(B)(1) AND 12(B)(6)**

**GREENBERG TRAURIG, LLP**

Jena M. Valdetero (P82366)
77 West Wacker, Suite 3100
Chicago, Illinois 60601
(312) 456-1025
valdeteroj@gtlaw.com

Christopher S. Dodrill
2200 Ross Avenue, Suite 5200
Dallas, Texas 75201
(214) 665-3681
dodrillc@gtlaw.com

**BUSH SEYFERTH PLLC**

Moheeb H. Murray (P63893)
100 West Big Beaver, Suite 400
Troy, Michigan 48084
(248) 822-7809
murray@bsplaw.com

## TABLE OF CONTENTS

STATEMENT OF THE ISSUES PRESENTED ....................................................... ii

CONTROLLING OR MOST APPROPRIATE AUTHORITY ............................. iii

TABLE OF AUTHORITIES ................................................................................. iv

I.   INTRODUCTION ........................................................................................1

I.   ALLEGED FACTUAL BACKGROUND ......................................................5

   A. The Michigan Preservation of Personal Privacy Act .......................................5

   B. Crane's Claims............................................................................................6

II.  ARGUMENT.................................................................................................7

   A. The Complaint Should Be Dismissed under Rule 12(b)(1) for Lack of
      Subject Matter Jurisdiction. ...........................................................................7

     1. Legal Standard ........................................................................................7

     2. Crane Lacks Article III Standing.............................................................8

   B. The Complaint Should Be Dismissed, in Whole or in Part, under Rule
      12(b)(6) for Failure to State a Claim. ...........................................................12

     1. Legal Standard ......................................................................................12

     2. The Statute of Limitations Bars PPPA Claims Here Accruing before June
        8, 2016. ................................................................................................13

     3. Crane Fails to Allege Facts Showing that ABA Disclosed *ABA Journal*
        Subscriber Information between June 8 and July 31, 2016. ....................14

III. CONCLUSION ...........................................................................................16

## STATEMENT OF THE ISSUES PRESENTED

1.      To have Article III standing to bring his claim under Michigan's Preservation of Personal Privacy Act ("PPPA") in federal court, Plaintiff Mark Crane must prove that he has suffered an injury-in-fact. Plaintiff alleges that Defendant American Bar Association ("ABA") violated the PPPA by disclosing his identity as an ABA member, and thus as a subscriber to the *ABA Journal*. But Crane's allegations, along with facts subject to judicial notice, do not establish an Article III injury to Crane's privacy interests because Crane made that information public through his own lawyer advertising. Must the Court dismiss this case for lack of subject matter jurisdiction because Plaintiff cannot allege a cognizable injury-in-fact to satisfy Article III?

**Defendant's Answer: Yes.**

2.      Michigan federal courts have ruled that PPPA claims are subject to a six-year statute of limitations, which begins to run when the violation occurs. Plaintiff filed his Complaint on June 8, 2022. Should Plaintiff's claims that ABA violated the PPPA before June 8, 2016, be dismissed because they are time barred?

**Defendant's Answer: Yes.**

3.      Given the statute of limitations and the limited availability of statutory damages under the PPPA, Plaintiff must allege facts showing that ABA violated the PPPA between June 8, 2016, and July 31, 2016—a mere span of 53 days. But Plaintiff's abstract allegations do not establish that ABA violated the PPPA during this narrow accrual period. Should Plaintiff's Complaint be dismissed because it fails to state a claim upon which relief can be granted?

**Defendant's Answer: Yes.**

## CONTROLLING OR MOST APPROPRIATE AUTHORITY

**Cases**

*Spokeo, Inc. v. Robins*,
  578 U.S. 330 (2016) ..........................................................................8, 9

*TransUnion LLC v. Ramirez*,
  141 S. Ct. 2190 (2021) .....................................................................2, 8

*Coulter-Owens v. Time Inc.*,
  695 F. App'x 117 (6th Cir. 2017)......................................................2, 8

*Perlin v. Time Inc.*,
  237 F. Supp. 3d 623 (E.D. Mich. 2017) ...........................................3, 9

*Pratt v. KSE Sportsman Media, Inc.*,
  No. 1:21-cv-11404, 2022 U.S. Dist. LEXIS 27591 (E.D. Mich. Feb. 15, 2022)…
  ........................................................................................ 3, 4, 5, 14

**Statutes**

1989 Mich. Pub. Act. No. 206 ...................................................................5

MICH. COMP. LAWS § 445.1711, *et seq.* ...............................................2, 5

# TABLE OF AUTHORITIES

## Cases

*Albrecht v. Treon,*
  617 F.3d 890 (6th Cir. 2010) ................................................................13

*Ashcroft v. Iqbal,*
  556 U.S. 662 (2009) ................................................................... 13, 15

*Bell Atl. Corp. v. Twombly,*
  550 U.S. 544 (2007) ................................................................13

*Boelter v. Hearst Communs., Inc.,*
  192 F. Supp. 3d 427 (S.D.N.Y. 2016) ................................................10

*Buchholz v. Meyer Njus Tanick, PA,*
  946 F.3d 855 (6th Cir. 2020) ................................................9

*Coulter-Owens v. Time Inc.,*
  695 F. App'x 117 (6th Cir. 2017) ................................................2, 8

*Ctr. for Bio-Ethical Reform, Inc. v. Napolitano,*
  648 F.3d 365 (6th Cir. 2011) ................................................13

*Duran v. The Detroit News, Inc.,*
  200 Mich. App. 622, 504 N.W.2d 715 (1993) ................................................9

*Earp v. Detroit,*
  16 Mich. App. 271, 167 N.W.2d 841 (1969) ................................................10

*Flagg v. City of Detroit,*
  252 F.R.D. 346 (E.D. Mich. 2008) ................................................10

*Golden v. Gorno Bros., Inc.,*
  410 F.3d 879 (6th Cir. 2005) ................................................8

*Hillson v. Kelly Servs. Inc.,*
  No. 15-CV-10803, 2017 U.S. Dist. LEXIS 8699 (E.D. Mich. Jan. 23, 2017) ................9

*Houchens v. Beshear,*
  850 F. App'x 340 (6th Cir. 2021) ................................................7

*Jean-Louis v. City of Riverside,*
  No. EDCV 13-01059 MMM (ASx), 2015 U.S. Dist. LEXIS 199777 (C.D. Cal. Feb. 9, 2015) ................................................1

iv

*Jones v. Lacey*,
    108 F. Supp. 3d 573 (E.D. Mich. 2015) ............................................................12

*Loren v. Blue Cross & Blue Shield of Mich.*,
    505 F.3d 598 (6th Cir. 2007) ...................................................................7

*Malam v. Adducci*,
    469 F. Supp. 3d 767 (E.D. Mich. 2020) ................................................3

*Moeller v. Am. Media, Inc.*,
    235 F. Supp. 2d 868 (E.D. Mich. 2017) ................................................9

*Perlin v. Time Inc.*,
    237 F. Supp. 3d 623 (E.D. Mich. 2017) .............................................3, 9

*Pratt v. KSE Sportsman Media, Inc.*,
    No. 1:21-cv-11404, 2022 U.S. Dist. LEXIS 27591 (E.D. Mich. Feb. 15, 2022)…
    ...................................................................................... 3, 4, 5, 14

*Spokeo, Inc. v. Robins*,
    578 U.S. 330 (2016) ...................................................................8, 9

*Steel Co. v. Citizens for a Better Env't*,
    523 U.S. 831 (1998) ...................................................................7

*TransUnion LLC v. Ramirez*,
    141 S. Ct. 2190 (2021) ...............................................................2, 8

**Statutes**

1989 Mich. Pub. Act. No. 206 ......................................................................5

MICH. COMP. LAWS § 445.1711, *et seq.* .....................................................2, 5

MICH. COMP. LAWS § 600.5805(2) ..............................................................3

MICH. COMP. LAWS § 600.5807 ..................................................................3

MICH. COMP. LAWS § 600.5827 ..................................................................3

**Other Authorities**

1988 Mich. Legis. Serv. 378 ......................................................................10

Executive Order 2020-122 ........................................................................14

Executive Order 2020-58 ..........................................................................14

Merriam-Webster Online Dictionary, *available at* https://www.merriam-webster.com/dictionary/disclose ...........................................................10

William L. Prosser, LAW OF TORTS (3d ed. 1964)....................................10

Samuel D. Warren & Louis D. Brandeis, *The Right to Privacy*, 4 HARV. L. REV. 193 (1890).........................................................................................10

WEBSTER'S NINTH NEW COLLEGIATE DICTIONARY (1986) .....................................10

## Rules

FED. R. CIV. P. 12(b)(1)...............................................................................7

FED. R. CIV. P. 12(b)(6)..............................................................................13

FED. R. EVID. 201(b)(2).................................................................................1

MICH. R. PROF. CONDUCT 7.1 ......................................................................11

# I.    INTRODUCTION

The American Bar Association ("ABA") is the world's largest voluntary association of lawyers. Among many benefits, ABA members may receive complimentary access to online and print versions of the *ABA Journal* magazine. ECF No. 1, PageID.3 ¶ 2 (identifying "subscription to the award-winning ABA Journal/The Lawyer's Magazine" among the benefits of ABA membership).

Mark Crane is a Michigan lawyer, and according to his public profile with the State Bar of Michigan, a "member of . . . the American Bar Association."[1] On the State Bar's website, Crane also publishes his "primary address," phone number, email address, educational history, civic activities, MENSA membership, and areas of law practice.[2] Crane's law practice advertises that same information online.[3]

Despite advertising this information, Crane alleges that "during the relevant pre-July 31, 2016 time period," ABA "disclosed" to third parties that Crane is an

---

[1]    *See* State Bar of Michigan, Find a Lawyer, https://sbm.reliaguide.com/lawyer/48307-MI-Mark-Crane-32848 (last visited Aug. 2, 2022). ABA is submitting an unopposed request that the Court take judicial notice under Federal Rule of Evidence 201(b) that this information is published on the website of the State Bar of Michigan, a matter of public record. *See Jean-Louis v. City of Riverside*, No. EDCV 13-01059 MMM (ASx), 2015 U.S. Dist. LEXIS 199777, at *8 n.20 (C.D. Cal. Feb. 9, 2015) ("The California State Bar website and the attorney entries provided therein are proper subjects of judicial notice under Rule 201 of the Federal Rules of Evidence.").

[2] *Id.*

[3] *See* Mark E. Crane, PLLC, http://www.markcranelaw.com/attorneys.php (last visited Aug. 2, 2022). ABA further requests that the Court take judicial notice that this information is published on the website for Crane's law firm.

ABA member, and thus a subscriber to the *ABA Journal*, in violation of Michigan's Preservation of Personal Privacy Act ("PPPA"), MICH. COMP. LAWS § 445.1711, *et seq.* ECF No. 1, PageID.1–2 ¶ 1. Crane seeks statutory damages under a since amended version of the PPPA, individually and on behalf of a putative class, for alleged violations occurring "during the relevant pre-July 31, 2016 time period." *Id.*, PageID.22 ¶ 65. Crane's Complaint fails for at least three reasons.

*First*, Crane lacks Article III standing to pursue his PPPA claim for statutory damages because he has not suffered an injury-in-fact. The Supreme Court "has rejected the proposition that a plaintiff automatically satisfies the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right." *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2205 (2021) (quotations omitted). Although the Sixth Circuit has ruled that a plaintiff has standing to pursue a PPPA claim when "the violation at issue" involved "the privacy in one's reading materials," *Coulter-Owens v. Time Inc.*, 695 F. App'x 117, 121 (6th Cir. 2017), Crane does not establish such an injury here. Crane is a Michigan lawyer who advertises his ABA membership to the public through the websites of the State Bar of Michigan and his own firm's website. Crane cannot claim an injury to any "privacy interest" based on allegations that ABA disclosed that same information, which Crane equates with disclosing his identity as an *ABA Journal* subscriber. In other words, having made this information public,

2

Crane cannot allege a cognizable privacy interest that has been harmed. Crane lacks an Article III injury-in-fact, and the Complaint must be dismissed for lack of subject matter jurisdiction.

*Second*, any PPPA claim based on alleged violations before June 8, 2016, is time barred. The statute of limitations on a PPPA claim runs from "the time the wrong upon which the claim is based was done regardless of the time when the damage results." *Pratt v. KSE Sportsman Media, Inc.*, No. 1:21-cv-11404, 2022 U.S. Dist. LEXIS 27591, at *15–16 (E.D. Mich. Feb. 15, 2022) (citing *Perlin v. Time Inc.*, 237 F. Supp. 3d 623, 634 (E.D. Mich. 2017), and quoting MICH. COMP. LAWS § 600.5827). Crane sued ABA on June 8, 2022. *See generally* ECF No. 1. Applying the six-year limitations period of MICH. COMP. LAWS § 600.5805(2) to PPPA claims, any alleged PPPA violation occurring more than six years earlier (on or before June 8, 2016), is time barred and should be dismissed. *See Pratt*, 2022 U.S. Dist. LEXIS 27591, at *16 (dismissing time-barred PPPA claims under six-year limitations period).[4]

---

[4] Although federal courts in Michigan have determined that the six-year limitations period of MICH. COMP. LAWS § 600.5807 applies to PPPA claims, neither the Michigan Supreme Court nor the Sixth Circuit has decided that issue. *See Pratt*, 2022 U.S. Dist. LEXIS 27591, at *11. Thus, while those decisions are persuasive, they are not controlling on this Court. *See Malam v. Adducci*, 469 F. Supp. 3d 767, 789 (E.D. Mich. 2020) (recognizing that "a district court's opinion is never binding precedent"). ABA seeks to preserve the applicability of the three-year statute of limitations for further review, if necessary.

*Third*, Crane's PPPA claim fails because he does not allege facts showing that ABA violated the PPPA during the 53-day accrual period that applies to his claim. Crane limits his claim for statutory damages, as he must, to alleged violations occurring "during the relevant pre-July 31, 2016 time period." ECF No. 1, PageID.22 ¶ 65. And as explained above, "[t]he six-year statute of limitations bars Plaintiffs' PPPA claims that accrued on or before" June 8, 2016. *Pratt*, 2022 U.S. Dist. LEXIS 27591, at *16. So to state a claim for statutory damages under the PPPA, Crane must allege that ABA violated the PPPA after June 8, 2016, and before July 31, 2016. Any earlier and the claim is time-barred; any later and statutory damages are not recoverable.

Crane fails to thread that needle. All Crane alleges in support of his claim is a third-party "mailing list" dated March 15, 2022, that purports to show that ABA "rents" ABA member names and addresses. ECF No. 1, PageID.3 ¶ 2. And Crane says that he received a "barrage of unwanted junk mail" some time before July 31, 2016. *Id.*, PageID.1 ¶ 1. But neither of these allegations, even if true, would prove that ABA violated the PPPA between June 8 and July 31, 2016. A "mailing list" in March 2022—even if it "is refreshed monthly," *id.*, PageID.3 ¶ 2—says nothing about what ABA did over seven weeks in 2016, and receiving junk mail before July 31, 2016, is not indicative of a PPPA violation within a precise accrual period.

Crane's allegations fail to state a claim. For these reasons, the Complaint should be dismissed.

## I.   ALLEGED FACTUAL BACKGROUND

### A.   The Michigan Preservation of Personal Privacy Act

In 1988, Congress passed the federal Video Privacy Protection Act after a leak of Supreme Court nominee Judge Robert Bork's video rental history to news outlets. ECF No. 1 at PageID.7 ¶ 14; *see Pratt*, 2022 U.S. Dist. LEXIS 27591, at *5–6 (E.D. Mich. Feb. 15, 2022) (detailing statutory background). Michigan followed suit with the PPPA in 1989. MICH. COMP. LAWS § 445.1711, *et seq.*; ECF No. 1, PageID.7–8 ¶ 15. Until it was amended in 2016, the PPPA contained the following prohibition:

> [A] person, or an employee or agent of the person, engaged in the business of selling at retail, renting, or lending books or other written materials, sound recordings, or video recordings shall not disclose to any person, other than the customer, a record or information concerning the purchase, lease, rental, or borrowing of those materials by a customer that indicates the identity of the customer.

1989 Mich. Pub. Act. No. 206 (codified at MICH. COMP. LAWS § 445.1715(1) until amended by 2016 Mich. Pub. Act. No. 92.).[5] As one federal court has recognized, "[t]he Michigan Legislature's stated interest in enacting the [PPPA] is the protection of consumer privacy." *Boelter v. Hearst Communs., Inc.*, 192 F. Supp. 3d 427, 447 (S.D.N.Y. 2016) (citing H.B. No. 5331, 1988 Mich. Legis. Serv. 378). The PPPA

---

[5] Crane sues under this former version of the statute. ECF No. 1, PageID.3–4 ¶ 3.

originally allowed for recovery of "actual damages . . . or $5,000, whichever is greater," but the Michigan Legislature revised the PPPA and eliminated the availability of statutory damages for violations after July 31, 2016. *Id.* (codified at MICH. COMP. LAWS § 445.1715(2)(a) until amended by 2016 Mich. Pub. Act. No. 92.). Claims for PPPA violations after that date require actual damages. MICH. COMP. LAWS § 445.1715(2).

## B. Crane's Claims

Crane is a Michigan lawyer and self-identified "member of . . . the American Bar Association"[6] who alleges that he "was a subscriber to *ABA Journal* magazine, including during the relevant pre-July 31, 2016 time period." ECF No. 1, PageID.5 ¶ 9. Crane contends that "[s]ince subscribing to *ABA Journal*, and during the relevant pre-July 31, 2016 time period, ABA disclosed, without the requisite consent or prior notice, Plaintiff's Private Reading Information" and "rented or exchanged mailing lists containing Plaintiff's Private Reading Information to third parties seeking to contact ABA subscribers" in violation of the PPPA. *Id.*

To make his claim, Crane relies on information listed on an "AMERICAN BAR ASSOCIATION MASTERFILE Mailing List" that ABA allegedly "rented" to third parties. *Id.*, PageID.2 ¶ 2. The date on the supposed "mailing list" is

---

[6] State Bar of Michigan, Find a Lawyer, https://sbm.reliaguide.com/lawyer/48307-MI-Mark-Crane-32848 (last visited Aug. 2, 2022).

"3/15/2022," and it purports to come from "a list broker, NextMark, Inc.," not the ABA. *Id.*, PageID.3. Taken as true, Crane's mailing list reflects information about all ABA members, each of whom receives an *ABA Journal* subscription as part of their membership benefits. It says:

> ABA members . . . pay annual dues for the comprehensive range of benefits that membership in the ABA affords them. In addition to a subscription to the award-winning ABA Journal/The Lawyer's Magazine, they receive savings on high-quality products and services for use at home, the office and on the road.

*Id.* Crane's mailing list does not say that *ABA Journal* subscriber information in particular is for rent. *Id.* Crane seeks only statutory damages under the pre-July 31, 2016 version of the PPPA, along with costs and attorneys' fees. *Id.*, PageID.23 ¶ 73.

## II.    ARGUMENT

### A.    The Complaint Should Be Dismissed under Rule 12(b)(1) for Lack of Subject Matter Jurisdiction.

#### 1.    Legal Standard

The Court should consider ABA's jurisdictional argument under Federal Rule of Civil Procedure 12(b)(1) before taking up the Rule 12(b)(6) arguments, "since the Rule 12(b)(6) challenge becomes moot if this court lacks subject matter jurisdiction." *Houchens v. Beshear*, 850 F. App'x 340, 342 (6th Cir. 2021). Rule 12(b)(1) requires dismissal when a plaintiff lacks standing to sue under Article III of the U.S. Constitution. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 831, 101–02 (1998). Of course, "a plaintiff must possess both constitutional and statutory

7

standing in order for a federal court to have jurisdiction." *Loren v. Blue Cross & Blue Shield of Mich.*, 505 F.3d 598, 606 (6th Cir. 2007). And "Article III standing requires a concrete injury even in the context of a statutory violation." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 341 (2016). Crane has the burden of establishing subject matter jurisdiction. *Golden v. Gorno Bros., Inc.*, 410 F.3d 879, 881 (6th Cir. 2005).

### 2.  Crane Lacks Article III Standing.

Although the Sixth Circuit recognized in an unpublished decision that an allegation of a PPPA violation may confer Article III standing when "the privacy in one's reading materials" is violated, *Coulter-Owens*, 695 F. App'x at 121, not every PPPA claim satisfies Article III's injury-in-fact requirement. Crane must still plead facts showing that he has suffered an "invasion of a legally protected interest" that is "concrete and particularized" and "actual or imminent," not "conjectural or hypothetical." *Spokeo*, 578 U.S. at 339 (quotations omitted). To be sure, a plaintiff "does not automatically satisfy the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right." *TransUnion*, 141 S. Ct. at 2220 (quotations and alterations omitted). A "bare procedural violation" of a statute does not itself fulfill the injury-in-fact requirement of Article III. *Spokeo*, 578 U.S. at 341.

To evaluate whether Crane has alleged a concrete injury sufficient under Article III, "'it is instructive to consider whether [that harm] has a close relationship

to a harm that has traditionally been regarded as providing a basis for a lawsuit in English or American courts.'" *Buchholz v. Meyer Njus Tanick, PA*, 946 F.3d 855, 861 (6th Cir. 2020) (quoting *Spokeo*, 578 U.S. at 341). Courts examining the standing of PPPA plaintiffs have looked to common law privacy torts to identify whether that traditionally regarded harm is implicated. *See Moeller v. Am. Media, Inc.*, 235 F. Supp. 2d 868, 873 (E.D. Mich. 2017) (citing *Hillson v. Kelly Servs. Inc.*, No. 15-CV-10803, 2017 U.S. Dist. LEXIS 8699, at *13 (E.D. Mich. Jan. 23, 2017)); *Perlin*, 237 F. Supp. 3d at 641. In this analysis, courts recognize that "the right guaranteed by the [PPPA] is similar in kind to other privacy rights that were gradually recognized by American courts over the course of the last century[.]" *Perlin*, 237 F. Supp. 3d at 627–29.

But those traditional common law privacy torts do not recognize harms accompanying the disclosure of information that is already public. For example, a cause of action for public disclosure of private facts requires that "the information disclosed must be of a private nature that excludes matters already of a public record or otherwise open to the public eye." *Duran v. The Detroit News, Inc.*, 200 Mich. App. 622, 631, 504 N.W.2d 715 (1993). Indeed, Crane himself injects the PPPA's privacy aims throughout his Complaint, claiming protection of "Private Reading Information" and using the words "private" and "privacy" *90 times*. *E.g.*, ECF No.

1, PageID.23 ¶ 72 (alleging "invasions of their statutorily protected right to privacy (afforded by the PPPA)").[7]

The common law offers no basis for recognizing standing for a privacy claim when, as here, the information allegedly disclosed is already public. *See Earp v. Detroit*, 16 Mich. App. 271, 276–77, 167 N.W.2d 841 (1969) (outlining "four forms of invasion of privacy"). The publication of public information is not a "traditionally regarded harm" in the common law, as "the thing into which there is intrusion or prying must be private." *Id.* (citing William L. Prosser, LAW OF TORTS (3d ed. 1964), § 112 p. 833); *accord* Samuel D. Warren & Louis D. Brandeis, *The Right to Privacy*, 4 HARV. L. REV. 193, 218 (1890) ("The right to privacy ceases upon the publication of the facts by the individual, or with his consent."). Recognizing an Article III injury-in-fact for the "disclosure" of information already known through lawyer advertising under the PPPA would exceed any notion of what constituted a harm under the common law.

---

[7] The PPPA' use of the word "disclose" shows that the statute was intended to provide a right of action for plaintiffs whose *private* information is shared. The word "disclose" means "to make known or public." Merriam-Webster Online Dictionary, *available at* https://www.merriam-webster.com/dictionary/disclose; *accord Flagg v. City of Detroit*, 252 F.R.D. 346, 358 (E.D. Mich. 2008) ("To 'divulge' information ordinarily entails 'mak[ing] known' or revealing something which is 'private or secret'") (quoting WEBSTER'S NINTH NEW COLLEGIATE DICTIONARY at 370 (1986), and Merriam-Webster Online Dictionary). In the end, something cannot be disclosed if it is already known.

Yet that is what Crane asks the Court to do here. The information that Crane complains that ABA disclosed in violation of the PPPA—his ABA membership, and in turn, information about his *ABA Journal* subscription—was already public as a result of Crane's own lawyer advertising. A search on the State Bar of Michigan's website returns just one "Mark Crane," who practices law in Rochester, Michigan.[8] The state bar identifies Crane as an attorney, "a member of . . . the American Bar Association," and supplies not just his mailing address, phone number, and email, but his educational history, his credentials, and his civic activities:[9]

Mark is a Sustaining Member of the Oakland County Bar Association and past chair of the OCBA's Family Court Committee. He is a member of the State Bar of Michigan (Family Law Section) and the American Bar Association and is a Fellow of the Oakland County Bar Foundation. He sits as a Case Evaluator for the Oakland County Circuit and District Courts and is routinely appointed as a Guardian Ad Litem and Appointed Attorney in Oakland County Probate Court guardianship and conservatorship cases. For many years, Mark has provided pro bono legal representation through the Women's Survival Center, Oakland-Livingston Legal Aid and through the Family Law Assistance Project.

Crane's law firm advertises the same information.[10]

Crane bases his PPPA claim on the ABA's alleged disclosure of his ABA membership status, which Crane equates with disclosing his status as an *ABA Journal* subscriber. But, even accepting that claim, Crane has no plausible

---

[8]   *See* State Bar of Michigan, Member Directory, Mark E. Crane, https://sbm.reliaguide.com/lawyer/48307-MI-Mark-Crane-32848 (last visited Aug. 2, 2022).

[9] *Id.*

[10]   *See* Mark E. Crane, PLLC, http://www.markcranelaw.com/attorneys.php (last visited Aug. 2, 2022). Michigan Rule of Professional Conduct 7.1 prohibits "false, fraudulent, misleading, or deceptive" lawyer advertising.

11

expectation of privacy in his *ABA Journal* "reading information." *See Jones v. Lacey*, 108 F. Supp. 3d 573, 584 (E.D. Mich. 2015) ("a would-be plaintiff cannot assert constitutional information-privacy claim as to information that was already in the public realm at the time of the alleged privacy breach"). Crane has intentionally made his ABA membership known to the world, on the state bar's website and his own firm's website. This information cannot be considered private in any sense of the word, as Crane has made it publicly known. And without a privacy interest at stake, Crane has suffered no injury-in-fact, and he cannot use a "bare procedural violation" of the PPPA to stand in its place. Crane lacks Article III standing to pursue his claim, and the Complaint should be dismissed under Rule 12(b)(1).

**B.    The Complaint Should Be Dismissed, in Whole or in Part, under Rule 12(b)(6) for Failure to State a Claim.**

Even if the Court decides that Crane established Article III standing despite suffering no privacy invasion, the Court should dismiss the Complaint, in whole or in part, under Rule 12(b)(6).

**1.    Legal Standard**

The Court should dismiss the Complaint under Rule 12(b)(6) if it determines that Crane "fails to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Crane must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action" is insufficient. *Albrecht v. Treon*, 617

F.3d 890, 893 (6th Cir. 2010) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 554 (2007)).

To survive dismissal, the Complaint must "state a claim to relief that is plausible on its face," and that, if accepted as true, are sufficient to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555, 570. "A claim is plausible on its face if the 'plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Ctr. for Bio-Ethical Reform, Inc. v. Napolitano*, 648 F.3d 365, 369 (6th Cir. 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009)).

### 2. The Statute of Limitations Bars PPPA Claims Here Accruing before June 8, 2016.

Seeking statutory damages only, Crane limits his PPPA claims to violations occurring "during the relevant pre-July 31, 2016 time period," but he does not say when that period begins. ECF No. 1, PageID.22 ¶ 65. Michigan federal courts have interpreted the PPPA as having a six-year statute of limitations that runs from the alleged violation. *See Pratt*, 2022 U.S. Dist. LEXIS 27591, at *16–17. Crane filed his Complaint on June 8, 2022. *See generally* ECF No. 1. So any PPPA violation that Crane alleges occurred before June 8, 2016—six years before the filing date—

is time barred. *See Pratt*, 2022 U.S. Dist. LEXIS 27591, at *16–17 (applying statute of limitations to bar untimely PPPA claims).[11]

### 3. Crane Fails to Allege Facts Showing that ABA Disclosed *ABA Journal* Subscriber Information between June 8 and July 31, 2016.

The limitations period and the sunsetting availability of statutory damages thus act as bookend constraints on Crane's PPPA claim. To satisfy the statute of limitations, Crane must allege a PPPA violation after June 8, 2016, and to pursue statutory damages, he must allege a violation before July 31, 2016. But the Complaint lacks any allegation about when ABA allegedly disclosed any information, let alone that ABA disclosed any information about *ABA Journal* subscribers in these 53 days. Crane depends on pure speculation: a third party's "mailing list" from March 2022 that purports to offer for rent ABA membership information generally, and the receipt of junk mail at some point. None of that, however, is probative of whether ABA violated the PPPA six years ago. These allegations do not "allow[] the court to draw the reasonable inference that [ABA] is liable for the misconduct alleged" during the accrual period that applies here. *Iqbal*, 556 U.S. at 677.

---

[11] ABA expects that Crane may argue that the statute of limitations applicable to the PPPA was tolled for 103 days under Executive Order 2020-58, but that argument is misplaced. While the governor tolled limitations periods as an emergency measure, she rescinded it with Executive Order 2020-122.

The "mailing list" that Crane attaches to his Complaint as Exhibit A does not support Crane's allegation that ABA rented his *ABA Journal* subscriber information between June 8 and July 31, 2016. The mailing list is dated March 15, 2022, as shown in the circled text:



ECF No. 1, PageID.3 ¶ 2; ECF No. 1-1. A "mailing list" allegedly offered for sale by a third party in March 2022, however, says nothing about whether ABA disclosed information almost six years earlier in June or July 2016. Nor does Crane's threadbare allegation that he received "a barrage of unwanted junk mail." ECF No. 1, PageID.1 ¶ 1. In fact, Crane does not even allege when he received that unwanted junk mail or that he received it at the same address he provided to ABA in 2016.

By waiting until the eve of the running of the statute of limitations to file his claim, Crane has hemmed himself into a tight window to establish a claim. Crane must plead facts showing that ABA violated the PPPA not any time, ever, but between June 8 and July 31, 2016. But Crane's scattershot allegations do not establish a PPPA violation during that narrow accrual period, and his PPPA claim thus fails.

## III.   CONCLUSION

For these reasons, the Court should dismiss the Complaint with prejudice because (i) Plaintiff lacks an injury-in-fact sufficient to convey Article III standing, and this Court thus lacks subject matter jurisdiction over Plaintiff's claim, and (ii) Plaintiff fails to state a claim for which relief can be granted, in part because claims based on alleged PPPA violations before June 8, 2016, are time barred, or in whole because Plaintiff fails to plausibly allege a PPPA violation during the narrow accrual period applicable to his claim.

Respectfully submitted,

**GREENBERG TRAURIG, LLP**

/s/  *Jena M. Valdetero*
Jena M. Valdetero (P82366)
77 West Wacker, Suite 3100
Chicago, Illinois 60601
(312) 456-1025
valdeteroj@gtlaw.com

Christopher S. Dodrill
2200 Ross Avenue, Suite 5200
Dallas, Texas 75201
(214) 665-3681
dodrillc@gtlaw.com

**BUSH SEYFERTH PLLC**

Moheeb H. Murray (P63893)
100 West Big Beaver, Suite 400
Troy, Michigan 48084
(248) 822-7809
murray@bsplaw.com

*Counsel for Defendant*
*American Bar Association*

## CERTIFICATE OF SERVICE

I certify that on August 4, 2022, I electronically filed the foregoing document with the Clerk of the Court using the ECF system, which will provide electronic notice and copies of such filing to counsel of record.

/s/  *Christopher S. Dodrill*
Christopher S. Dodrill

17