UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| **MARK CRANE, individually and on behalf of all others similarly situated,**<br><br>Plaintiff,<br><br>vs.<br><br>**AMERICAN BAR ASSOCIATION,**<br><br>Defendant. | 2:22-CV-11267-TGB-CI<br><br>HON. TERRENCE G. BERG<br><br><br><br>**ORDER GRANTING MOTION TO DISMISS<br>(ECF NO. 11)** |

Plaintiff Mark Crane is a lawyer and member of the American Bar Association. As an ABA member, Crane necessarily subscribes to the *ABA Journal*. Crane has sued the ABA under a Michigan statute that prohibits sellers of reading materials from disclosing what materials their customers receive, asserting that the ABA provided information about his ABA membership, and therefore, his *ABA Journal* subscription, to third parties. However, because Crane himself has publicly advertised his ABA membership and consequently his *ABA Journal* subscription, he cannot allege a concrete injury, and lacks standing. This Court therefore lacks subject-matter jurisdiction, and Crane's complaint must be dismissed.

1

## I.  BACKGROUND

The following allegations are drawn from Plaintiff Crane's complaint. Mark Crane is a Michigan lawyer. Compl., ECF No. 1, PageID.5-6. At all times relevant to this suit, he was a member of the American Bar Association. According to exhibits attached to Crane's complaint, all ABA members are automatically subscribed to the *ABA Journal,* so by virtue of his membership, he necessarily became a subscriber. ECF No. 1-2, PageID.29.[1] According to Crane, the ABA rents or discloses the information of ABA members to third parties without members' consent. Specifically, Crane accuses the ABA of disclosing full names and home addresses of its members. ECF No. 1, PageID.4. Crane says that the ABA also distributes other demographic data such as

---

[1] The "AMERICAN BAR ASSOCIATION MASTERFILE Mailing List" appended to Plaintiff's complaint indicates that ABA members "pay annual dues for the comprehensive range of benefits that membership in the ABA affords them" including "a subscription to the award-winning ABA Journal/The Lawyer's Magazine." ECF No. 1-2, PageID.29. A court may review exhibits attached and referred to by a plaintiff's complaint when deciding a motion to dismiss. *Blick v. Ann Arbor Pub. Sch. Dist.*, 516 F. Supp. 3d 711, 720 (E.D. Mich. 2021). Crane's complaint appears to be premised on the notion that disclosure of his ABA membership is equivalent to disclosure of the fact that he subscribes to the *ABA Journal*. *See* Pl's. Resp., ECF No. 16, PageID.606–607 ("notwithstanding any consensual disclosures by Plaintiff of his own [personal reading information], Defendant's nonconsensual disclosures of Plaintiff's [personal reading information] . . . worked intangible yet concrete harm[.]"). He does not allege that the ABA disclosed information about his purchase of any other reading materials beyond the *ABA Journal*.

subscribers' age, year admitted to the bar, gender, and educational background. *Id.*

Crane's one-count Complaint accuses the ABA of violating Michigan's Preservation of Personal Privacy Act ("Privacy Act"). The Privacy Act provides that

> a person, or an employee or agent of the person, engaged in the business of selling at retail, renting, or lending books or other written materials, . . . shall not knowingly disclose to any person, other than the customer, a record or information that personally identifies the customer as having purchased, leased, rented, or borrowed those materials from the person engaged in the business.

Mich. Comp. Laws § 445.1712. Because every ABA member is also necessarily an *ABA Journal* subscriber, Crane argues that when the ABA provided information about his ABA membership to third parties it identified him as an *ABA Journal* subscriber.[2]

## II. STANDARD OF REVIEW

A motion to dismiss under Rule 12(b)(1) challenges the Court's jurisdiction over the subject matter of the suit. The plaintiff has the burden of proving jurisdiction. *Madison-Hughes v. Shalala*, 80 F.3d 1121, 1130 (6th Cir. 1996).

---

[2] At least for purposes of this motion, the parties do not appear to dispute that disclosing Crane's ABA membership is tantamount to disclosing that he is a subscriber to the ABA Journal. *See* Def's. Mot., ECF No. 12, PageID.567.

3

A motion to dismiss under Rule 12(b)(6), meanwhile, challenges the factual allegations in the complaint. In deciding a motion under 12(b)(6), the Court views the complaint in the light most favorable to plaintiff and accepts all well-pleaded factual allegations as true. *Lambert v. Hartman*, 517 F.3d 433, 439 (6th Cir. 2008). A plaintiff's complaint need contain only "enough facts to state a claim for relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

### III. DISCUSSION

Defendant American Bar Association advances two grounds for dismissal. First, it contends that, because Crane has already publicly divulged his ABA membership on the website of the State Bar of Michigan and on his law firm's website, he can allege no injury-in-fact, and lacks standing to sue. Second, it argues that any claims accruing on or before June 8, 2016, are barred by the applicable statute of limitations, and that the Privacy Act was amended in 2016 to eliminate the availability of statutory damages for claims accruing after July 31, 2016. The ABA contends that Crane has not adequately pleaded that his information was disclosed during the very narrow 53-day window between June 8, 2016 and July 31, 2016.

Article III, § 2 of the Constitution extends judicial authority "only to 'Cases' and 'Controversies.'" *Spokeo, Inc. v. Robins*, 578 U.S. 330, 337 (2016) (quoting U.S. Const. Art. III, § 2). Standing is a jurisdictional requirement that "ensure[s] that federal courts do not exceed their

4

authority" and "limits the category of litigants empowered to maintain a lawsuit in federal court to seek redress for a legal wrong." *Id.*; *see also Coal Operators & Assocs., Inc. v. Babbitt*, 291 F.3d 912, 915–16 (6th Cir. 2002). Because the Court lacks subject-matter jurisdiction if Crane cannot establish standing, it must considers the jurisdictional issue first. *Lyshe v. Levy*, 854 F.3d 855, 857 (6th Cir. 2017).

To establish Article III standing, a plaintiff must allege facts demonstrating that (1) they have suffered an injury in fact, (2) the injury was caused by the defendant's challenged conduct, and (3) the injury is likely to be redressed by a favorable judicial decision. *Spokeo*, 578 U.S. at 338. To establish an injury in fact, Crane must show an "invasion of a legally protected interest" that is (a) "concrete and particularized" and (b) "actual or imminent." *Id.* at 339 (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)).

"A bare procedural violation, divorced from any concrete harm" will not satisfy Article III's injury requirement. *Spokeo*, 578 U.S. at 341. A plaintiff cannot satisfy the injury-in-fact requirement just by pointing to a statute that grants them a statutory right, because "an injury in law is not an injury in fact." *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2205 (2021).

Cain thus must allege more than a "bare procedural violation" of the Privacy Act. But, the ABA argues, he cannot do so because he has already disclosed all of the information he accuses the ABA of revealing.

5

The ABA points to Crane's profile on the State Bar of Michigan webpage, which identifies him as an attorney and ABA member, and further supplies details about his mailing address, phone number, email, education, credentials, and other activities. Def's. Br., ECF No. 12, PageID.567. It further notes that Crane has made the same information available to the general public on his law firm's website. *Id.*

In some instances, intangible harms can satisfy the "concrete" injury requirement of Article III standing. *Spokeo*, 578 U.S. at 340. And because Article III's case-or-controversy requirement is "grounded in historical practice," *id.* at 340–41, "history and tradition offer a meaningful guide." *TransUnion*, 141 S. Ct. at 2204. Accordingly, The Supreme Court in *Spokeo* directed courts to consider whether an alleged injury bears a "close relationship to a harm that has traditionally been regarded as providing a basis for a lawsuit in English or American courts." *Spokeo*, 578 U.S. at 340–41. But a plaintiff is not required to plead a harm which is an "exact duplicate" of a type of injury already recognized in American history and tradition. *TransUnion*, 141 S. Ct. at 2204.

The Sixth Circuit has held that the harms associated with Privacy Act violations bear a sufficient relationship to a traditionally recognized harm. *See, e.g., Coulter-Owens v. Time Inc.*, 695 F. App'x 117, 121 (6th Cir. 2017) (explaining that disclosure of private reading information is not a bare procedural violation, but is "a violation of the [Act's] most basic

6

substantive protection" and collecting cases). District courts in the Sixth Circuit have applied this guidance to analogize Privacy Act violations to the tort of invasion of privacy. *See, e.g.*, *Perlin v. Time Inc.*, 237 F. Supp. 3d 623, 641 (E.D. Mich. 2017) (explaining that the right to nondisclosure of private reading information is "similar in kind to other privacy rights that were gradually recognized by American courts over the course of the last century[.]"); *Moeller v. Am. Media, Inc.*, 235 F. Supp. 3d 868, 873 (E.D. Mich. 2017) ("Subscribers' right to privacy in their personal-reading information is grounded in an interest traditionally regarded as providing a basis for a lawsuit in English or American courts.") (citation and internal marks omitted).

This Court acknowledges that Privacy Act claims ordinarily will involve a concrete injury. But the Court "has an independent obligation to assure that standing exists" in every case. *Summers v. Earth Island Inst.*, 555 U.S. 488, 499 (2009). And Crane's case presents a unique factual situation not found in any other that this Court has been able to locate: Crane has already published all of the information he says would cause him injury if disclosed. The ABA argues that this is fatal to standing, while Crane casts his claim as an injury to his right to *control* the dissemination of the information.

The Supreme Court has rejected the "cramped notion of personal privacy" that a person has *no* interest in avoiding the disclosure of information that is already public in some other form, acknowledging

7

that "both the common law and the literal understandings of privacy encompass the individual's *control* of information concerning his or her person." *U.S. Dep't of Just. v. Reps. Comm. For Freedom of Press*, 489 U.S. 749, 763 (1989) ("*Reporters Committee*") (emphasis added).

The Supreme Court has further recognized that, because there are "few facts that are not at one time or another divulged to another" in organized society, the extent of privacy protection at common law "rested in part on the degree of dissemination of the allegedly private fact and the extent to which the passage of time rendered it private." *Id.* But there is a point at which information is no longer subject to any privacy interest at all. *See, e.g., Cox Broadcasting Corp. v. Cohn*, 420 U.S. 469, 494–495 (1975) ("[T]he interests in privacy fade when the information involved already appears on the public record"); *Reporters Committee*, 489 U.S. at 763–64 ("[I]nformation may be classified as private if it is intended for or restricted to the use of a particular person or group or class of persons: *not freely available to the public.*") (internal marks and citation omitted, emphasis added).

Privacy torts recognized at common law are limited by this principle—*i.e.*, that privacy interests wane and may be extinguished depending on the degree to which the information at issue is public. To sustain a claim for invasion of privacy, the information disclosed must be just that—private. *See Fry v. Ionia Sentinel-Standard,* 101 Mich. App. 725, 731 (1980) (explaining that "no liability exists for giving further

8

publicity to events within the public eye"); *Earp v. City of Detroit*, 16 Mich. App. 271, 276–77 (1969) (holding with respect to the tort of invasion of privacy that "the thing into which there is intrusion or prying must be private").

At issue here is the disclosure of what Crane calls "personal reading information:" the fact that he is an ABA member, and therefore a subscriber to its publication for members, the *ABA Journal*. But Crane has already disclosed that information himself on two well-trafficked websites: his law firm's, and that of the State Bar of Michigan. *See* Def's. Br., ECF No. 12, PageID.566–67. Crane also published substantially the same information in 2016 when the events giving rise to this suit allegedly arose. Def's. Repl., ECF No. 17, PageID.649. Then, as now, Crane's website stated that the information therein was "provided as a public service." *Id.* at PageID.649–50.

Crane argues that he published his ABA membership status on the websites "for clients and prospective clients of his to view," and that his publication does not equate to consent "to [the ABA's] wholesale rental, sale, and exchange" of the fact that he is an *ABA Journal* subscriber. Pl's. Resp., ECF No. 16, PageID.605. As the common law principles outlined above show, Crane's right to privacy does include some right to control the distribution of information about himself. But the record shows that Crane exercised that control and published to the entire world the very facts he claims the ABA revealed. Crane cannot now be heard to complain

9

that he was injured by the ABA's re-publication of what Crane then revealed and continues to reveal now—that claimed harm does not resemble any of the common law privacy torts discussed above.[3]

That is not to say that a plaintiff always lacks standing to bring a statutory claim under the Privacy Act whenever the information revealed is already public in some form. As the principles recited above show, "an individual's interest in controlling the dissemination of information regarding personal matters does not dissolve simply because that information may be available to the public in some form." *U.S. Dep't of Def. v. Fed. Lab. Rels. Auth.*, 510 U.S. 487, 500 (1994). For example, if a bookseller subject to the Privacy Act revealed public yet "otherwise hard-to-obtain information" about a person's reading habits, a person's privacy interest might be implicated. *Reporters Committee*, 489 U.S. at 764. But where information is already made "freely available to the public," before any disclosure by a defendant—as it was here—the common law would

---

[3] Arguably, that claimed harm does not implicate the purposes of the Privacy Act either. In describing the law's purpose, Crane points to a contemporary statement by one of the sponsors of an analogous bill passed by the United States Congress that there is a "gut feeling that people ought to be able to read books and watch films without the whole world knowing . . . the whole process of intellectual growth is one of privacy . . . this intimate process should be protected from the disruptive intrusion of a roving eye." Comp,. ECF No. 1, PageID.8 (quoting statement of Rep. McCandless, S. Rep. No. 100-599 at Pg. 7 (1988), available on Westlaw at 1988 U.S.C.C.A.N. 4342-1, *4342-7). Here, Crane has voluntarily revealed to all that he is an ABA member and thus a subscriber to the *ABA Journal*.

10

...

recognize no invasion-of-privacy claim for giving additional publicity to something a person has already made public. *Id.* at 763–64.

In sum, while the ABA's alleged conduct may amount to a violation of the Privacy Act, the injury about which Crane complains is not sufficiently concrete to confer standing and allow him to invoke the jurisdiction of the federal courts. Because Crane has not demonstrated standing and this Court accordingly lacks jurisdiction over Crane's claims, the Court will not consider the additional bases the ABA raises for dismissal. If Crane can allege that the ABA disclosed information about other books he purchased or magazines to which he subscribed, he may seek leave to amend his Complaint to include those allegations.[4]

## IV. CONCLUSION

For the foregoing reasons, Defendant American Bar Association's Motion to Dismiss is **GRANTED** on the basis of lack of subject-matter jurisdiction.

**IT IS SO ORDERED.**

Dated: March 22, 2023

                                                s/Terrence G. Berg
                                                TERRENCE G. BERG
                                                UNITED STATES DISTRICT JUDGE

---

[4] The mailing list appended to the Complaint appears to offer prospective customers a recipient category called "BOOK BUYERS." ECF No. 1-2., PageID.29. It is not wholly clear what that term means in context.